UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JEFFREY BOCKIAN,

                    Plaintiff,

    - against -

BANK OF NEW YORK MELLON CORP.,

                    Defendant.
-----------------------------------------------------------------x

Civ. No.

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

        Plaintiff Jeffrey Bockian, through his attorneys Vladeck, Raskin & Clark, P.C., complains of defendant Bank of New York Mellon Corp. ("BoNY") as follows:

### NATURE OF ACTION

        1.    Bockian is a highly regarded manager in finance with over 30 years of experience. Despite his excellent track record with BoNY, when he requested a reasonable accommodation because of the serious effects of long COVID, his manager, BoNY's Treasurer, reacted with hostility. Soon thereafter, BoNY dismissed him. At the same time, BoNY dismissed another employee who was the same age as Bockian and who also suffered long-term effects from COVID. Much of the accommodation Bockian requested related to the location of his work, which had been his location part-time and then full-time throughout his employment. The other accommodation was to limit his hours to 45 hours per week during his recovery, a request that would not be an "accommodation" in most jobs.

        2.    Bockian brings this action to remedy age discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); and age and disability discrimination and retaliation in violation

#1363211

of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); the New York City Human Rights Law, New York City Admin. Code, § 8–101 et seq. ("NYCHRL"); and the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 et. seq. ("CA Law").

3. Bockian seeks injunctive and declaratory relief, compensatory, liquidated, and punitive damages, and all other appropriate equitable and legal relief pursuant to the ADEA, ADA, NYSHRL, NYCHRL, and CA Law.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over plaintiff's ADEA and ADA claims pursuant to 28 U.S.C. § 1331, as those claims arise under federal law. This Court has supplemental jurisdiction over plaintiff's claims under the NYSHRL, NYCHRL, and CA Law pursuant to 28 U.S.C. § 1367 because these claims closely relate to his ADEA and ADA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy. This Court also has diversity jurisdiction over the NYSHRL, NYCHRL, and CA Law claims pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because plaintiff worked in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PROCEDURE

6. Pursuant to Section 8-502(c) of the New York City Human Rights Law, plaintiff will cause to be served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7. On October 12, 2023, Bockian filed a charge against BoNY alleging unlawful age and disability discrimination with the United States Equal Opportunity Employment Commission (the "EEOC").

8. On September 16, 2024, Bockian filed a charge with the California Civil Rights Department.

## PARTIES

9. Bockian was an employee of BoNY for over a decade, until the Company unlawfully terminated his employment on January 30, 2023. Bockian is a citizen of California.

10. BoNY is a financial institution. Upon information and belief, it is incorporated in Delaware and is headquartered in New York.

## FACTUAL ALLEGATIONS

Background

11. Bockian is 66 years old.

12. Bockian has the medical condition known as long COVID.

13. Just prior to his employment with BoNY, Bockian performed consulting and contracting services from 2008 until 2012, including to BoNY.

14. From 1998 until 2008, Bockian held positions of increasing responsibility as a Vice President, Senior Vice President and Executive Vice President of Countrywide Securities Corp. and Countrywide Bank. At Countrywide he ran the Finance Desk, which developed and managed liquidity to fund operations and provided secured financing to clients. From 1983 until 1997, Bockian was employed at Morgan Stanley & Co., starting as a Vice President in the Operations Department, and ending as Director of Mortgage-Backed Securities Options Trading in the Fixed Income Sales and Trading division.

#1363211

15. From 2012 until January 30, 2023, Bockian was a Managing Director and Head of Funding and Short-Term Investments at BoNY. He reported to the Treasurer.

16. At BoNY, Bockian was responsible for managing cash and regulatory liquidity of The Bank of New York Mellon Corporation ("Holding Company") and its North American Banking entities, including The Bank of New York Mellon ("Institutional Bank"), the Company's largest bank. To do so, Bockian directed activities of the following functional areas that reported to him:

- **Funding Desk:** Managed daily Holding Company liquidity and executed Parent and North American banking entities; capital and liquidity actions including issuing Commercial Paper, issuing Senior and Subordinated Debt, performing Common Share buybacks, issuing Preferred Shares, performing borrowing from Federal Hom Loan Bank Pittsburgh, and issuing brokered Certificates of Deposit.

- **Reserve Management:** Projected and managed end-of-day balances for the Company's Federal Reserve Member Bank balance sheets.

- **Repo Trading Desk:** Generated liquidity, covered the Company's US Treasury short positions, and invested excess liquidity through repurchase agreements to increase the Company's net interest income.

- **Collateral:** Managed securities and loan collateral for the Company's bank entities at the Federal Reserve Discount Window and Federal Home Loan Bank Pittsburgh, met clearing fund and derivatives margin requirements, and collateralized municipal and fiduciary deposits.

#1363211

- **Intraday Liquidity:** Managed intraday liquidity flows on a minute-to-minute basis including to facilitate US Treasury auction settlements which often exceed $100 billion in cash and securities settlements in very short timeframes.

- **FX Hedging Desk:** Formulated and executed foreign exchange transactions to protect the Company's capital investments and cash flows in non-USD entities.

- **Bank of New York Mellon, N. A. Treasurer:** Planned and organized execution of cash and collateral management activities, debt issuance, capital actions, and issuance of brokered Certificates of Deposit for the Company's private wealth bank.

17. Throughout Bockian's employment at BoNY, he received positive reviews, as well as bonuses.

18. Until May 2022, the Treasurer was Scott Friedenrich.

19. Bockian has lived in California since 1998. When BoNY hired him, management knew he lived in California. Although Bockian originally planned to relocate to New York, after he joined BoNY Friedenrich and Bockian agreed that Bockian would spend approximately two to three weeks in New York separated by one week in California. When Bockian was in California, he either worked from BoNY's Los Angeles office or his home.

20. The split time arrangement worked well. No one told Bockian there were any issues with the situation.

COVID

21. Bockian flew from New York to California on February 28, 2020.

22. Soon thereafter, COVID began to spread, particularly in New York.

23. In March 2020, Friedenrich told Bockian not to come to New York.

24. A little later in March 2020, nearly all of BoNY, including all members of Bockian's team, switched to work from home.

25. In or about September 2021, Bockian got a severe case of COVID. He managed to work through the first week of COVID, pushing himself because of an important regulatory deadline. During the second week of COVID, Bockian was bedridden. He could not walk—at first not at all and then only 10-15 feet to the bathroom—and had severe joint pain, fatigue, and headaches.

26. Bockian started to recover somewhat from COVID, but then developed long COVID. Long COVID caused him extreme fatigue, joint and muscular pain, breathing issues sometimes accompanied by low blood oxygen levels, and headaches that were sometimes severe.

27. Bockian worked through the symptoms for the most part. He took medications when necessary and sometimes had to lie down for 15 minutes at a time during the day.

28. Bockian's doctor told him that he would not get better unless he got rest. His doctor also said that Bockian's bicoastal arrangement was not advisable because at high altitudes he experienced severe symptoms.

29. Friedenrich retired from BoNY in or about May 2022. Sarah McAvoy then became Treasurer.

Return to the Office and Request for Accommodation

30. In the second quarter of 2022, BoNY issued statements expressing a "preference" that employees return to the office 2-3 days per week. At that point, however, it was

not a requirement. By the third or fourth quarter of 2022, BoNY was expressing an "expectation" for employees to be in the office 2-3 days per week.

31. Even before BoNY began expressing this expectation, McAvoy made it clear that she wanted everyone back in the office.

32. McAvoy was based in New York, but had direct reports in other cities, including Pittsburgh and London. One or two of her direct reports also had work from home arrangements that, upon information and belief, were not related to medical issues.

33. In and around September 2022, Bockian told McAvoy that if BoNY was going to insist on people coming to the office, he was going to have to request an accommodation for his disability. McAvoy was upset by his suggestion. Bockian also proposed that he could be made an employee of the Los Angeles office, as he could travel to that office without triggering severe symptoms. McAvoy suggested that Bockian's issue was a lifestyle choice, rather than a medical issue requiring accommodation. She asked how she could tell the CEO that the Head of Funding was based in L.A., even though Bockian had worked part-time in L.A. for seven years and then three years in L.A. full-time, and no-one had raised any issues with his performance. McAvoy refused to approve making Bockian an employee of the L.A. office.

34. On November 2, 2022, Bockian submitted a formal request for accommodation, completed by his doctor. The main accommodations requested were to limit his work week to 45 hours (rather than the 60-80 hours he often worked) and avoid plane travel. Bockian spoke to HR before submitting the paperwork.

35. A few weeks after Bockian submitted his request, he received a notice that BoNY was still reviewing his request for accommodation.

36.　　From mid-December 2022 to mid-January 2023, Bockian tried to find out the status of his request and received no response. There was no interactive process.

<u>BoNY Dismisses Bockian</u>

37.　　On January 11, 2023, McAvoy told Bockian that he was going to be officially notified on January 17 or 18, 2023, that his employment was being terminated. She told him not to speak with anyone.

38.　　On January 18, 2023, Bockian received the formal notice of his dismissal as part of a reduction in force.

39.　　A few days later, Bockian received a notice from HR that it was closing his request for accommodation because he would no longer be with the Company.

40.　　One of the other employees dismissed at the same time as Bockian was a man who reported to Bockian and had been with BoNY for over 20 years. Like Bockian, this man was 64 years old at the time. The other man dismissed had also had a serious case of COVID, requiring hospitalization, after which he needed to work from home. That employee performed his work from home flawlessly.

41.　　After the dismissals, Bockian's duties and the other dismissed employee's duties were reassigned to younger employees who, upon information and belief, were not suffering any serious medical issues or disabilities.

FIRST CAUSE OF ACTION
ADEA: Age Discrimination

42.　　Plaintiff repeats and realleges paragraphs 1 through 41 as if fully set forth herein.

43. By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his age in violation of the ADEA.

44. Defendant's conduct showed reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the ADEA.

45. Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
## ADA: Disability Discrimination

46. Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

47. By the acts and practices described above, defendant, in violation of the ADA, discriminated against plaintiff on the basis of his disability, including by failing to provide reasonable accommodation.

48. Defendant's conduct showed reckless disregard for plaintiff's statutorily protected rights.

49. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant discriminatory practices.

## THIRD CAUSE OF ACTION
## NYSHRL: Discrimination

50. Plaintiff repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

51. By the acts and practices described above, defendant, in violation of the NYSHRL, discriminated against plaintiff on the basis of his age and disability, including by failing to provide reasonable accommodation.

52. Defendant acted with malice and/or reckless indifference to plaintiff's rights protected under NYSHRL.

53. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## FOURTH CAUSE OF ACTION
### NYCHRL: Discrimination

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. By the acts and practices described above, defendant, in violation of the NYCHRL, discriminated against plaintiff on the basis of his age and disability, including by failing to provide reasonable accommodation.

56. Defendant engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

57. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## FIFTH CAUSE OF ACTION
CA Law: Discrimination

58. Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59. By the acts and practices described above, defendant, in violation of the CA Law, discriminated against plaintiff on the basis of his age and disability, including by failing to provide reasonable accommodation.

60. Defendant acted with malice and/or reckless indifference to plaintiff's rights protected under the CA Law.

61. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## SIXTH CAUSE OF ACTION
ADA: Retaliation

62. Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63. By the acts and practices described above, defendant retaliated against plaintiff for seeking to exercise his rights under the ADA.

64. Defendant's conduct showed reckless disregard for plaintiff's statutorily protected rights.

65. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory practices.

#1363211

## SEVENTH CAUSE OF ACTION
### NYSHRL: Retaliation

66. Plaintiff repeats and realleges paragraphs 1 through 65 as if fully set forth herein.

67. By the acts and practices described above, defendant retaliated against plaintiff for seeking to exercise his rights under the NYSHRL.

68. Defendant acted with malice and/or reckless indifference to plaintiff's rights protected under state law.

69. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory practices.

## EIGHTH CAUSE OF ACTION
### NYCHRL: Retaliation

70. Plaintiff repeats and realleges paragraphs 1 through 69 as if fully set forth herein.

71. By the acts and practices described above, defendant retaliated against plaintiff for seeking to exercise his rights under the NYCHRL.

72. Defendant engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

73. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory practices.

## NINTH CAUSE OF ACTION
CA Law: Retaliation

74. Plaintiff repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75. By the acts and practices described above, defendant retaliated against plaintiff for seeking to exercise his rights under CA Law.

76. Defendant acted with malice and/or reckless indifference to plaintiff's rights protected under the CA Law.

77. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's retaliatory practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) declaring the acts and practices complained of herein to be violations of the ADEA, ADA, NYSHRL, NYCHRL, and CA Law;

(b) enjoining and permanently restraining these violations of the ADEA, ADA, NYSHRL, NYCHRL, and CA Law;

(c) directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to place plaintiff in the position he would have occupied but for defendant's unlawful treatment of him, and making him whole for all earnings and other benefits he would have received but for defendant's unlawful treatment, including but not limited to wages, including back pay and front pay, bonuses, equity, and other lost benefits;

(e) directing defendant to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

(f) directing defendant to pay liquidated damages for its violation of the ADEA;

(g) directing defendant to pay plaintiff additional amounts as punitive damages;

(h) awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

(i) awarding plaintiff the costs of this action, together with reasonable attorneys' fees; and

(j) awarding such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       November 8, 2024

VLADECK, RASKIN & CLARK, P.C.

By: */s Anne L. Clark*
Anne L. Clark
Attorneys for Plaintiff
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300

#1363211